IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES TEIRON SHELLEY,                    §
TDCJ #1079015,                           §
         Petitioner,                §
                                         §
v.                                       §          CIVIL ACTION NO. H-05-2669
                                         §
DOUG DRETKE, Director,                   §
Texas Department of Criminal Justice,    §
Correctional Institutions Division,      §
         Respondent.                §

## MEMORANDUM OPINION AND ORDER

James Teiron Shelley, a state inmate incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), represented by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court conviction for possession with intent to deliver a controlled substance (cocaine). Respondent has submitted a motion for summary judgment (Docket Entry No. 4), with a copy of the state court records. Petitioner has filed a response. (Docket Entry No. 6). After consideration of the pleadings, the motion, the response, the relevant state court records, and the applicable law, respondent's motion for summary judgment is **GRANTED**, and this case is **DISMISSED**.

## I.  PROCEDURAL HISTORY

A jury in the 177th District Court of Harris County, Texas, found petitioner guilty of possession with intent to deliver a controlled substance (cocaine) under cause number

875348.  After finding two enhancement paragraphs "true," the trial court sentenced him to fifty years incarceration in the TDCJ.  The conviction was affirmed on appeal.  *Shelley v. State*, 101 S.W.3d 606 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd).  The Texas Court of Criminal Appeals refused discretionary review.  *Shelley v. State*, PDR No. 549-03.  Petitioner's application for state habeas relief was denied without a written order on findings of the trial court without a hearing.  *Ex parte Shelley*, Application No. 61,560-01, at cover.

In this federal habeas petition, petitioner complains that trial counsel was ineffective in failing to convey to him the one-day duration of the state's initial plea bargain offer.  Respondent moves for summary judgment and argues that petitioner's ground fails as a matter of law.

## II.    STANDARD OF REVIEW

### A.    Habeas Corpus Review Under 28 U.S.C. § 2254

The federal writ of habeas corpus is an extraordinary remedy, which shall not extend to any inmate unless he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. §§ 2241(c)(3); 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993).  The pending habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has

modified a federal habeas court's role in reviewing state inmate petitions in order to prevent federal habeas "retrials," and to ensure that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The provisions of 28 U.S.C. § 2254(d), as amended by the AEDPA, set forth a highly deferential standard for evaluating state court rulings, which demands that state court decisions "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner bears the burden to prove that he is entitled to habeas relief under this deferential standard.  *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).  For claims adjudicated on the merits, a petitioner is not entitled to relief unless the state court's conclusion resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams v. Taylor*, 529 U.S. 362 (2000); 28 U. S. C. § 2254(d).  In addition, 28 U.S.C. § 2254(e)(1) provides that any factual findings made by the state court in deciding a petitioner's claims are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence to the contrary.

A federal habeas corpus court's review under the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001).  Courts are to review pure questions of law and mixed questions of law and fact under section 2254(d)(1), and pure

questions of fact under section 2254(d)(2).  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.

2001).  A decision is contrary to clearly established federal law for purposes of section

2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme

Court] on a question of law or if the state court decides a case differently than [the] Court

has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision

is an unreasonable application of federal law for purposes of section 2254(d)(2) if the state

court identified the correct governing legal principle but unreasonably applied that principle

to the facts of the case.  *Id*.  To be unreasonable, the state decision must be more than merely

incorrect or erroneous.  *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Rather, the state

court's application of clearly established law must be "objectively unreasonable." *Id*.  Stated

differently, a reversal is not required unless the state court decision applied the correct legal

rule to a given set of facts in a manner that is so patently incorrect as to be "unreasonable."

*Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

These standards will be applied to petitioner's petition.

**B.    Summary Judgment**

In addition to the standards applied by the applicable federal habeas corpus statutes,

the respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules

of Civil Procedure.  In deciding a motion for summary judgment under Rule 56, a court must

determine whether the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P.

4

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A movant's burden is to point

out the absence of evidence supporting the nonmovant's case.  *Id*.  To survive summary

judgment, the nonmovant must submit or identify evidence in the record to show the

existence of a genuine issue of material fact as to each element of the cause of action.  *Id*.

An issue is material if its resolution could affect the outcome of the action.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether a fact issue has been

raised, the facts and the inferences to be drawn from them must be reviewed in the light most

favorable to the nonmoving party.[1]  *See Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814,

817 (5th Cir. 2002)*.  However, factual controversies are resolved in favor of the nonmovant

"only when there is an actual controversy – that is, when both parties have submitted

evidence of contradictory facts."  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525

(5th Cir. 1999).

The nonmovant's burden is not met by mere reliance on the allegations or denials in

the nonmovant's pleadings.  *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377,

380 (5th Cir. 1998).  Likewise, unsubstantiated or conclusory assertions that a fact issue

---

[1]     While it is true that Rule 56 of the Federal  Rules of Civil Procedure applies generally "with
equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th
Cir. 2000), the Fifth Circuit has held that Rule 56 applies only to the extent that it does not
conflict with the habeas rules.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir.), *cert.
granted in part on other grounds, and dism'd*, 124 S. Ct. 1652 (2004).  Therefore, 28 U.S.C.
§ 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to
be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed
facts must be construed in the light most favorable to the nonmoving party. *See id*.  Unless
the petitioner can rebut the presumption of correctness by clear and convincing evidence as
to the state court's findings of fact, those findings must be accepted as correct.  *See id*.

exists do not meet this burden.  *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Instead, the nonmoving party must present specific facts which show the existence of a genuine issue on every essential component of its case.  *Id*.  In absence of any proof, the district court will not assume that the nonmovant could or would prove the necessary facts.  *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).

## III.  FACTUAL BACKGROUND

Petitioner alleged in his state habeas proceeding, as he does here, that his defense counsel failed to inform him that unless he accepted the State's initial plea bargain offer made on March 21, 2001, it would expire that same day.  He claims that, had counsel informed him of the one-day deadline, he would have accepted the offer.  In his affidavit submitted to the state habeas court, petitioner testified as follows:

> [Stanley Schneider's] associate, Tom Moran, appeared in court on March 21, [2001], entered Mr. Schneider as attorney of record, and reset the case.  Mr. Moran told me that the State's offer was 12 years; he did not say that the State would withdraw the offer if I did not accept it that day.  I responded that I needed to speak with Mr. Schneider before deciding whether to accept the offer.

> I called Mr. Schneider collect from the jail and asked whether I should accept the offer.  He said that I should not, as the offer would get better over time.  He did not mention that there was a deadline for accepting the offer.  My family had not paid him any money at this time.

> My family did not make the initial payment to Mr. Schneider until April 6, 2001.  I was indicted for the primary offense on April 12 and reindicted as a habitual offender on April 23.  The State never again offered 12 years.  I rejected an offer of 25 years after the court denied the motion to suppress.  A jury found me guilty and, after I pled true to the enhancement paragraphs, the court sentenced me to 50 years.

Attorney Randy Schaffer recently told me that the cover of the State's file reflects that the 12 year offer was available only on March 21 and was withdrawn when I did not accept it on that date. (Exhibit H). Had Mr. Moran or Mr. Schneider advised me that the offer was available on that date only, that my prior convictions were valid and available to enhance the minimum sentence to 25 years, and that I did not have any viable factual or legal defenses, I would have accepted the offer.

*Ex parte Shelley*, pp. 34-36.

In his affidavit submitted to the state court on collateral review, attorney Tom Moran

testified as follows:

I have no memory of this case. However, the handwriting on the reset form is mine and I am sure I am the person who filled it out. It is common for one lawyer in my firm to make an appearance for another when the attorney assigned to the case is busy elsewhere. I have no doubt that I made the appearance for Mr. Schneider because he was detained or otherwise unavailable.

When an offer of plea bargain is made by the State, it is my practice and habit to always carry that offer to the client regardless of whether I personally think that the plea offer is reasonable or not. I also always convey every condition on every plea offer to the client. I follow this practice regardless of whether I am the attorney in charge of the case or whether I am handling a case for another lawyer.

When the client is represented by another lawyer, I habitually convey the offer and any conditions on the offer along with a statement that I know nothing about the case and I cannot recommend whether to take it or not. I habitually tell the client that he can do whatever he wants but that he should discuss the matter with his attorney.

While I have no memory of this case, I cannot recall a case in which I reset for another lawyer in which the Harris County District Attorney's Office did not agree to keep an offer open until the client could confer with his counsel.

*Ex parte Shelley*, pp. 61-62.

7

In his affidavit submitted to the state court on collateral review, attorney Stanley Schneider testified as follows:

I did not appear in court on March 21, 2001 and did not personally receive the 12 year offer or the fact that it was for 'one day only.'  I did not personally convey the offer  nor did I discuss the deadline with him since I did not know about the deadline because I was not in court when it was made.  It was very common for Tom Moran to make an appearance for me if I was unable to attend a setting.  It was also very common for the district attorney's office to not enforce a one day offer if I was not present in court.  I know that it is our practice that when one lawyer in the firm makes an appearance for another and an offer is made, we would convey the offer to the client and convey all of the limitations on the offer to the client.  If the client desired to take the plea, the lawyer would enter the plea whether I was present or not.  The state's file indicates that the indictment in this case was returned on April 12, 2001.  I appeared in court on April 5, 2001, (sic) it is very possible that the 12 year offer might have been available so long as the indictment had not been returned.

I have no recollection of ever discussing the 12 year offer with the petitioner on March 21, 2001.  I have  vague recollection of talking to petitioner after an offer was conveyed to him by Tom Moran.

I have never said to any client in 30 years of practicing law that an offer made by the State 'will' get better with time.  That would be a guarantee.  I have never guaranteed a course of litigation to a client.  I may have said to a client that an offer 'could' get better with time but that it depended on the circumstances and the case.   An offer could improve depending on the witnesses that we discovered during the course of an investigation.   In deciding whether to take an offer, I would also ask the individual whether there were witnesses that would prove his innocence or that the arrest and search was illegal and whether the offense report was accurate.

Sometime during the course of the litigation, petitioner might have indicated a desire to accept the 12 year offer.  However, his desire to plead to 12 years may have come at a time when the State was offering 18 years or 20 years or 25 years.  According to the State's file, the second offer made by the state was 18 years in September, 2001 and he turned down 20 [years] prior to trial.  The case was set for a dispositive motion to suppress hearing which would have resulted in a 25 year sentence.  After the hearing, the petitioner refused to

enter a plea and demanded a trial.  His brother Cedric and his mother begged him to take the plea.  He refused.  A jury found him guilty and the court then sentenced him to 50 years.

*Ex parte Shelley*, pp. 51-52.

In denying petitioner habeas relief, the trial court found that the facts asserted in the affidavits of Stanley Schneider and Tom Moran were true, and that:

1.     Applicant was informed of the State's plea offer of twelve (12) years in prison and of all of the conditions related to this plea offer;

2.     Applicant was not informed, guaranteed, assured, or promised that the State's plea offers 'would get better over time;'

3.     Applicant rejected the State's plea offer of twelve (12) years in prison, and the State withdrew the twelve (12) year plea offer;

4.     Applicant's rejection of the State's twelve (12) year plea offer was knowingly and voluntarily made;

5.     The totality of the representation afforded Applicant was sufficient to protect his right to reasonably effective assistance of counsel; and

6.     Applicant has failed to demonstrate that his conviction was improperly obtained.

*Ex parte Shelley*, p. 70.  The Court of Criminal Appeals  based its denial of habeas relief on these findings.  *Id*. at cover.

## IV.     INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  U.S. Const. amend. VI.  A federal habeas petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner

must establish both constitutionally deficient performance by his counsel and actual prejudice as a result of the deficient performance. *Id*. at 687. The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson  v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 687-90.

Actual prejudice is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness

10

does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. *Id*. at 372.

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

**_Deficient Performance_**. –To establish his claim under *Strickland* regarding trial counsel's deficient performance, petitioner in the instant case must present probative evidence that on March 21, 2001, the State made a plea bargain offer of twelve years incarceration and the offer was limited to that same day; that trial counsel was aware of that deadline; that counsel failed to inform petitioner of the deadline; and that the State withdrew the offer on March 21, 2001 for lack of acceptance.

The precise nature of any plea bargain offer made by the State on March 21, 2001 is unclear from the record. Petitioner presents no affidavits from the State clarifying the nature and duration of any offer made that day. Instead, he references an unverified copy of what appears to be the cover of the State's file for his criminal case, reflecting remarks for a twelve year and eighteen year recommendations. *Ex parte Shelley*, p. 32. On that document, an arrow is drawn from the number eighteen ("18") to "Stan Schneider" alongside a September, 2001 date. Next to that is written and underlined twice, "1 time only! Refused + rejected w/drawn." Above those remarks appears "12 yr. 3-21-01." The number twelve

11

is crossed through.  There is no arrow between the number twelve and Schneider's name. It cannot be ascertained from the document whether the "1 time only" comment refers to the number twelve or the number eighteen.[2]  Thus, the notations on the file are ambiguous at best and the record in this case does not establish that the initial twelve-year plea bargain offer was intended to last for one day only.  As petitioner concedes, March 21, 2001 was his preliminary appearance in state court.  According to Moran's affidavit, he could not recall a case in which the Harris County District Attorney's Office had refused to keep an offer open until the client could confer with his counsel.  More importantly, the state habeas corpus court implicitly found that neither Moran nor Schneider failed to communicate the fact of any one-day limit of which they were aware.  If the initial twelve-year plea bargain offer was good for only March 21, 2001, and there is no proof that it was, petitioner presents no evidence of a clear and convincing character, as required under § 2254, to show that either Moran or Schneider knew of the one-day deadline but failed to disclose that condition to him.  Under these circumstances, petitioner fails to show that his defense counsel was deficient for failing to inform him of any deadline for accepting the initial plea bargain offer.

   ***Prejudice from Deficient Performance***.– Petitioner must show not only that counsel was deficient in failing to inform him of the alleged plea bargain offer deadline, but also that he was prejudiced by such failure.  That is, petitioner must establish that he would have accepted the plea bargain offer on March 21, 2001 had he known it was limited to that day.

---

[2]     No affidavit of attorney Randy Schaffer is submitted attesting that the twelve year offer had been available only on March 21, 2001.

Accordingly, probative evidence must appear in the record that on March 21, 2001, petitioner was ready and willing to accept the State's twelve year plea bargain offer.  There is no such evidence whatsoever in the record.

Petitioner's own affidavit testimony defeats his claim in this regard.  In his affidavit, petitioner explains the following three conditions under which he would have accepted the State's plea bargain offer on March 21, 2001:

> (i)     if counsel had advised him that the offer was available for that day only;
>
> (ii)    if his prior convictions were valid and available to enhance the minimum sentence to twenty-five years; ***and***
>
> (iii)   if he had no viable factual or legal defenses to the charged offense.

Petitioner thus qualifies his willingness to accept the plea bargain offer on two conditions for which he presents no supporting probative evidence:  that he and trial counsel knew on March 21, 2001 that his prior convictions were valid and available for enhancement purposes, and that there were no viable factual or legal defenses to the charged offense.  In addition, nothing in the record shows that petitioner told Schneider that he wanted to accept the State's twelve-year offer or would have done so, had he known it was open for only one day.  Thus, even if a one-day condition existed and defense counsel Schneider somehow was deficient through his surrogate Moran on March 21 in failing to communicate the deadline to petitioner,  petitioner's proof is insufficient to show he was prejudiced by counsel's performance.

Petitioner's position here is a classic "if only I knew then what I know now" argument.  Because his bargaining power quickly dissipated after March 21, 2001, the date

13

of the alleged one-day twelve-year offer.  Petitioner was indicted on April 12, 2001, and later re-indicted as a habitual offender as the strength of the State's case became clearer.  After the indictment and re-indictment, Petitioner understandably wished he had accepted the State's initial plea bargain offer he extended to him on March 21, 2001.  Petitioner speaks, however, from the position of hindsight, a luxury not afforded him under the law.  The law does not expect omniscience by trial counsel.  Contrary to petitioner's assertions, *Strickland* requires this Court to view the attorney's performance from counsel's perspective at the time of the events.  Petitioner presents no probative evidence that as of March 21, 2001, or even shortly thereafter, counsel knew that petitioner's prior convictions were valid and available for enhancement purposes, that petitioner had no viable factual or legal defenses to the charged offense, or that petitioner would have taken the twelve year offer had he known the short duration.  In short, petitioner fails to establish prejudice under *Strickland*.[3]

## V.    CONCLUSION

An independent review of the record fails to reveal any probative evidence that on March 21, 2001, the State made a plea bargain offer to petitioner of twelve years incarceration, conditioned on acceptance that same day only.  Further, there is no probative evidence that had petitioner known the offer would expire that same day if not accepted, that he was ready and willing to accept the offer that day.  Petitioner has not shown either deficient performance or prejudice in support of his ineffective assistance of counsel claim.

---

[3]      It is noted that petitioner also refused the State's plea bargain offer of eighteen years made *after* he had been reindicted as a habitual offender.

14

The state court record does not reveal clear and convincing evidence that rebuts the presumption of correctness of the state court's adjudication of petitioner's claim. The state court's findings were not objectively unreasonable. 28 U.S.C. § 2254(d)(1). Petitioner fails to show a basis for the relief he seeks.

## VI.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997).

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This standard includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were sufficient to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Stated differently, where claims have been dismissed on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id*.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). Because the issues presented involve clearly settled areas of law, the Court concludes that jurists of reason would not debate whether the substantive or procedural rulings in this case were correct. Accordingly, a certificate of appealability will not issue in this case.

15

VII.   **ORDER**

Accordingly, the Court **ORDERS** as follows:

1.      Respondent's motion for summary judgment (Docket Entry No. 4) is **GRANTED**.

2.      The petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

3.      This cause of action is **DISMISSED** with prejudice.

4.      A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

**SIGNED** at Houston, Texas on this **14th** day of **February, 2006.**

Nancy F. Atlas
United States District Judge

16